UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| LINDA L. HAWKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 1:13-CV-00280 |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Linda Hawkins appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] (*See* Docket # 1.) For the following reasons, the Commissioner's decision will be AFFIRMED.

## I. PROCEDURAL HISTORY

Hawkins applied for DIB and SSI in January 2011, alleging disability as of July 24, 2010. (Tr. 188-201.) She was last insured for DIB on December 22, 2010 (Tr. 83); therefore, she must establish that she was disabled as of that date for purposes of her DIB claim. *See Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997) (explaining that a claimant must establish that he was disabled as of his date last insured in order to recover DIB benefits).

The Commissioner denied Hawkins's application initially and upon reconsideration. (Tr.

---

[1] All parties have consented to the Magistrate Judge. (Docket # 17); *see* 28 U.S.C. § 636(c).

109-24, 129-42.) After a timely request, a hearing was held on May 4, 2012, before Administrative Law Judge ("ALJ") Yvonne Stam, at which Hawkins, who was represented by counsel, and a vocational expert ("VE") testified. (Tr. 32-52.) On July 13, 2012, the ALJ rendered an unfavorable decision to Hawkins, concluding that she was not disabled because she could perform her past relevant work. (Tr. 19-27.) The Appeals Council denied her request for review, at which point the ALJ's decision became the final decision of the Commissioner. (Tr. 1-15.)

Hawkins filed a complaint with this Court on September 24, 2013, seeking relief from the Commissioner's final decision. (Docket # 1.) In this appeal, Hawkins alleges that the ALJ erred by: (1) improperly evaluating whether she met Listing 12.05C, intellectual disability;[2] and (2) improperly concluding that she could perform her past relevant work as a fast food worker and metal finisher. (Opening Br. of Pl. in Social Security Appeal Pursuant to L.R. 7.3 ("Pl.'s Opening Br.") 6-10.)

## II. FACTUAL BACKGROUND[3]

*A. Background*

At the time of the ALJ's decision, Hawkins was forty-five years old; had a twelfth-grade education with special education classes; and had work experience as a sandwich maker, lathe operator, parts inspector, fast food worker, metal finisher, and doughnut machine operator. (Tr. 83, 85, 280, 282, 287.) She was employed as a fast food worker at the time of the hearing. (Tr.

---

[2] Listing 12.05 was recently amended to substitute "intellectual disability" for "mental retardation," but was not otherwise substantively changed.

[3] In the interest of brevity, this Opinion recounts only the portions of the 367-page administrative record necessary to the decision.

245.) She alleges that she became disabled due to asthma, obesity, and mild mental retardation. (Pl.'s Opening Br. 2.) Because Hawkins does not challenge the ALJ's findings with respect to her physical limitations, the Court will focus on the evidence pertaining to her mental impairments.

### B. Hawkins's Testimony at the Hearing

At the hearing, Hawkins testified that she lives with her ex-husband; daughter; and two grandchildren, ages two and four. (Tr. 35-36.) She was working three days a week at McDonald's,[4] but planned to cut back because she was "trying to raise [her] grandkids right now." (Tr. 35.) Similarly, when asked why she could not work full time, Hawkins listed her leg pain, chronic obstructive pulmonary disease ("COPD"), and depression, and that she was raising her two grandchildren. (Tr. 40.)

In a typical day, Hawkins prepares breakfast for her grandchildren, changes diapers, helps them get dressed, and gets them to school. (Tr. 43-44.) Hawkins can drive, but does not have a car. (Tr. 44.) After she and her mother pick up the grandchildren in the afternoon, Hawkins prepares them lunch and plays with them. (Tr. 44.)

### C. Summary of the Relevant Medical Evidence

In March 2007, Hawkins underwent a mental status evaluation by Rebecca Wages, Ph.D. (Tr. 287-94.) Hawkins was pleasant and cooperative, but her mood was dysphoric with a somewhat constricted affect; she was informative, goal directed, and easily understood. (Tr. 287.) She had no history of hallucinations or delusions and appeared in good contact with

---

[4] Hawkins first testified that she was working thirty hours a week, but later said she was working twenty hours a week. (*Compare* Tr. 35, *with* Tr. 39.)

reality; her thought content revolved around her panic attacks, asthma, and COPD. (Tr. 287.)
Dr. Wages indicated that Hawkins thought of suicide, but was not suicidal. (Tr. 287.) Her
concentration and short-term memory were impaired, but she demonstrated fair judgment and
decision-making. (Tr. 287.)

Hawkins took the WAIS III, revealing a verbal IQ of 65, a performance IQ of 73, and a
full scale IQ of 65, which placed her in the mildly mentally retarded range. (Tr. 288, 290-92.)
Dr. Wages assigned her a Global Assessment of Functioning ("GAF") score of 69 and diagnosed
her with panic disorder without agoraphobia, mild; dysthymia; rule out social phobia; and mild
mental retardation based on one WAIS III.[5] (Tr. 289.) Dr. Wages indicated that Hawkins could
manage her own funds. (Tr. 289.)

In January 2011, Hawkins was evaluated by Ceola Berry, Ph.D. (Tr. 307-09.) Her mood
was euthymic with stable affective expression, and her concentration and attention to task were
adequate. (Tr. 308.) She denied suicidal or homicidal ideation, delusions, hallucinations, or
obsessive-compulsive preoccupation. (Tr. 308.) She also denied any difficulty in concentration
and memory, and her energy level persisted throughout the examination. (Tr. 308-09.) The
results of the mental status exam did not reveal any significant problems with concentration,
short-term memory, mental calculations, abstracting ability, general knowledge, or judgment.
(Tr. 309.) Dr. Berry opined that the findings suggested Hawkins's ability to work would
primarily be affected by her perceived physical limitations and secondarily by mood states; she

---

[5] GAF scores reflect a clinician's judgment about the individual's overall level of functioning. American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders* 32 (4th ed., Text Rev. 2000). A GAF score of 61 to 70 reflects some mild symptoms or some difficulty in social, occupational, or school functioning, but "generally functioning pretty well." *Id*. A GAF score of 71 to 80 reflects transient symptoms as expectable reactions to psychosocial stressors or a slight impairment in social, occupational, or school functioning. *Id*.

indicated that Hawkins's medication regime was "effective and efficient in managing mood." (Tr. 309.) Dr. Berry assigned Hawkins a GAF of 75 and diagnoses of mood disorder, not otherwise specified, and mild mental retardation by testing. (Tr. 309.)

In February 2011, B. Horton, Psy.D., a state agency psychologist, reviewed Hawkins's record and completed a psychiatric review technique and mental residual functional capacity ("RFC") assessment. (Tr. 326-44.) In the psychiatric review technique, Dr. Horton indicated that Hawkins did not meet or equal a listing, including Listings 12.02, organic mental disorders; 12.04, affective disorders; and 12.06, anxiety-related disorders. (Tr. 330, 340.) He further found that Hawkins had mild limitations in daily living activities and in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 340.) In the mental RFC assessment, Dr. Horton found that Hawkins was moderately limited in the ability to understand, remember, and carry out detailed instructions, but was not significantly limited in the remaining seventeen mental activity categories. (Tr. 326-27.) He concluded that Hawkins could perform unskilled work, commenting that her daily activities and work history indicated that she had better functioning than what her most recent IQ scores suggested. (Tr. 328.) Dr. Horton's opinion was later affirmed by William Shipley, Ph.D., a second state agency psychologist. (Tr. 344.)

## III.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings

are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

## IV. ANALYSIS

### A. The Law

Under the Act, a claimant is entitled to DIB or SSI if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process,

requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[6] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

## B. *The ALJ's Decision*

On July 13, 2012, the ALJ issued the decision that ultimately became the Commissioner's final decision. (Tr. 19-27.) She found at step one of the five-step analysis that although Hawkins had worked after her alleged onset date, it did not rise to the level of substantial gainful activity. (Tr. 21.) At step two, the ALJ concluded that Hawkins's borderline intellectual functioning, obesity, and asthma were severe impairments (Tr. 21); and at step three, that Hawkins's impairment or combination of impairments were not severe enough to meet a listing (Tr. 22-23).

Before proceeding to step four, the ALJ determined that Hawkins's symptom testimony

---

[6] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 416.920(e).

was not credible to the extent it portrayed limitations in excess of the following RFC:

> [T]he claimant has the residual functional capacity to perform light work . . . except she must avoid concentrated exposure to extreme heat, extreme cold, wetness, humidity, fumes, odors, dusts, gases, poor ventilation, and other pulmonary irritants; no work with the general public; and only brief and superficial contact with co-workers and supervisors.

(Tr. 23.)

Based on this RFC and the VE's testimony, the ALJ concluded at step four that Hawkins was capable of performing her past relevant work as a (1) fast food worker, as she actually performed it, and (2) metal finisher, both as she actually performed it and as it is generally performed. (Tr. 26-27.) Accordingly, Hawkins's claims for DIB and SSI were denied. (Tr. 27.)

### C. Substantial Evidence Supports the ALJ's Step-Three Finding That Hawkins Did Not Meet or Equal a Listing

Hawkins first argues that the ALJ erred in her step-three analysis by finding that she did not meet or equal a listing–specifically, Listing 12.05C, intellectual disability. Contrary to Hawkins's assertion, the ALJ's step-three conclusion is supported by substantial evidence.

> Listing 12.05C provides in relevant part:
>
> 12.05 Intellectual Disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. Pt. 404, Subpt P, App. 1 § 12.05. "[T]he structure of Listing . . . 12.05 indicates that a

8

claimant must show *both* that [s]he meets the listing's definition of mental retardation *and* that [s]he meets the required severity by satisfying the requirements in either A, B, C, or D." *Smallwood v. Astrue*, No. 2:08-cv-85, 2009 WL 2475272, at *8 (N.D. Ind. Aug. 11, 2009) (emphasis in original) (citing *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006)).

When boiled down, to meet Listing 12.05C, a claimant must show: (1) significantly subaverage intellectual functioning with deficits in adaptive functioning prior to age twenty-two; (2) a valid verbal, performance, or full scale IQ of 60 through 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function. *Charette v. Astrue*, 508 F. App'x 551, 553 (7th Cir. 2013) (unpublished); *Adkins v. Astrue*, 226 F. App'x 600, 605 (7th Cir. 2007) (unpublished); *Novy v. Astrue*, 497 F.3d 708, 709 (7th Cir. 2007); *Anderson v. Astrue*, No. 4:10-cv-91, 2011 WL 4899990, at *5 (N.D. Ind. Oct. 14, 2011); *Smallwood*, 2009 WL 2475272, at *8.

Here, although the ALJ did not specifically mention Listing 12.05C, she concluded that Hawkins did not demonstrate the requisite evidence of deficits in adaptive functioning to satisfy the Listing.[7] The Seventh Circuit Court of Appeals has explained that the term "deficits in adaptive functioning" denotes an "inability to cope with the challenges of ordinary everyday life." *Novy*, 497 F.3d at 709 (citing American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders, Text Revision (DSMIV-TR)* 42 (4th ed. 2000)); *see also Charette*, 508 F. App'x at 553 (unpublished) (clarifying that the Seventh Circuit does not require an ALJ

---

[7] The Commissioner does not challenge Hawkins's ability to satisfy the other two prongs of Listing 12.05C. Hawkins's WAIS-III testing in March 2007 revealed a verbal IQ of 65 and a full scale IQ of 65; and the ALJ concluded at step two that her obesity and asthma were severe impairments. *See Smith v. Colvin*, 9 F. Supp. 3d 875, 884 (E.D. Wis. 2014) (explaining that an ALJ's finding of a "severe" additional physical or mental impairment at step two satisfies the third prong of Listing 12.05C); *Washington v. Astrue*, No. 2:10-cv-367, 2012 WL 3108872, at *7 (N.D. Ind. July 31, 2012) (same).

9

to use a specific measurement method when assessing "deficits in adaptive functioning").

In discussing Hawkins's adaptive functioning, the ALJ stated:

> Although IQ tests show scores below 70, the claimant's adaptive functioning is inconsistent with mild mental retardation or a total inability to work. In fact, she has worked at substantial gainful activity levels and performs a variety of activities such as caring for grandchildren, shopping, and driving and maintaining a household that would indicate that her adaptive functioning is adequate. Even though diagnosing mild mental retardation, Dr. Wages concluded that she could manage her own funds. The claimant appears to function at a higher level than her IQ scores suggest . . . .

(Tr. 25; *see also* Tr. 22.) In addition, the ALJ considered that the GAF scores of 69 and 75 assigned by the consultative examiners suggested that even with her cognitive limitations Hawkins experienced "no more than mild symptoms or difficulty in functioning." (Tr. 25-26); *see Strack v. Astrue*, No. 1:10-cv-240, 2011 WL 4062524, at *16 (N.D. Ind. Sept. 13, 2011) (considering that claimant's GAF scores were all 60 or above supported the ALJ's finding that claimant did not have adaptive deficits).

The ALJ further observed that Hawkins planned to cut back on her work hours at McDonald's to raise her young grandchildren, "which would appear to be an increase rather than a reduction in activities." (Tr. 24); *see Burns v. Comm'r of Soc. Sec.*, No. 1:10-cv-42, 2011 WL 7568592, at *6-7 (E.D. Tenn. Sept. 7, 2011) (concluding that there was little evidence showing plaintiff suffers from "deficits in adaptive functioning," and that there was substantial evidence showing he does *not* suffer from such deficits); *Sherrod v. Astrue*, No. 10-c-451, 2011 WL 284349, at *12 (E.D. Wis. Jan. 25, 2011) (finding that plaintiff did not show deficits in adaptive functioning where she lived on her own, cared for herself and others, and managed household affairs with minimal assistance).

Moreover, this is a case where the claimant has a lengthy work history, which included

10

semi-skilled work, lending credence to her adaptive functioning. S*ee Adkins*, 226 F. App'x at 605 (concluding that the claimant failed to demonstrate deficits in adaptive functioning where he was gainfully employed until the age of forty-one without material complaints from his employers and the record contained only minimal evidence about his cognitive and medical state before age twenty-two other than his own testimony that he completed school only through the eighth grade); *Novy,* 497 F.3d at 710 (relying upon claimant's daily living activities, living circumstances, and work history when finding that she did not satisfy the adaptive deficits requirement of Listing 12.05(C)); *Witt v. Barnhart*, 446 F. Supp. 2d 886, 895-06 (N.D. Ill. 2006) (concluding that the claimant failed to exhibit deficits in adaptive functioning manifested prior to age twenty-two because of his eighteen-year work history, even though he suffered from learning disabilities and received poor marks in special education classes); *Cooper v. Massanari*, No. 00 C 8083, 2001 WL 1464930, at *8-9 (N.D. Ill. Nov. 15, 2001) (finding that although the claimant had taken special education classes and had only a ninth grade education, her work history and functional activities were ample evidence to support the ALJ's conclusion that she did not satisfy the adaptive deficits requirement of Listing 12.05C). And as the ALJ observed, Dr. Berry opined that Hawkins's ability to work was primarily affected by her perceived physical limitations. (Tr. 25)

Accordingly, although the ALJ did not mention Listing 12.05C by name, she adequately considered its criteria and observed that Hawkins did not have the requisite deficits in adaptative functioning. *Compare Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (inferring from the ALJ's written decision that he correctly recognized the applicability of the relevant listing for nonconvulsive epilepsy though the ALJ never specifically identified it by name), *with Scott v.*

11

*Barnhart*, 297 F.3d 589, 595-96 (7th Cir. 2002) (remanding the case where the ALJ failed to discuss or even reference the relevant listing, leaving the court "with grave reservations as to whether his factual assessment addressed adequately the criteria of the listing").

Furthermore, although they too did not particularly identify Listing 12.05, Drs. Horton and Shipley, the state agency psychologists, concluded that Hawkins's mental impairment did not meet or equal any listing. The Seventh Circuit has stated that "[t]he ALJ may properly rely upon the opinion of these medical experts." *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004 (citing *Scott v. Sullivan*, 898 F.2d 519, 524 (7th Cir. 1990)); *see also* SSR 96-6p, 1996 WL 374180, at *3.

In sum, Hawkins has failed to carry her burden of showing that she satisfied all of the criteria of Listing 12.05C. Consequently, the ALJ's step-three finding that Hawkins did not meet or equal a listing will be affirmed.

### D. *The ALJ's Step-Four Finding That Hawkins Could Perform Her Past Relevant Work as a Metal Finisher Is Supported by Substantial Evidence*

In her second argument, Hawkins contends that the ALJ's step-four finding–that she could perform her past relevant work as a fast food worker (as she actually performed it) and metal finisher (as generally performed in the national economy and as she actually performed it)–is not supported by substantial evidence. Although Hawkins's assertion has merit with respect to the fast food work, the ALJ's error is ultimately harmless because her finding concerning the metal finisher work is supported by substantial evidence. Accordingly, a remand is not required.

To begin, Hawkins first asserts that her past work in fast food does not rise to the level of substantial gainful activity, and thus, that the ALJ erred when considering it past relevant work.

12

At the hearing, the ALJ was unsure based on Hawkins's most recent earnings report whether her work at McDonald's rose to the level of substantial gainful activity. (Tr. 39.) After the hearing, the ALJ obtained an updated earnings report (dated May 7, 2012) revealing average earnings of $810 per month, which is less than the $1,010 per month substantial gainful activity level at that time. *See Monthly Substantial Gainful Activity Amounts by Disability Type*, http://www.ssa.gov/OACT/COLA/sga.html (last visited Nov. 5, 2014). In order for a job to constitute past relevant work at step four, it must rise to the level of substantial gainful activity. 20 C.F.R. §§ 404.1571-1575, 416.971-975; SSR 82-62, 1982 WL 31386, at *1; *see Lauer v. Bowen*, 818 F.2d 636, 639 (7th Cir. 1987). Therefore, because Hawkins's past work in fast food cannot be considered past relevant work under the regulations, the ALJ's finding that Hawkins could perform her "past relevant work as a . . . fast food worker" is not supported by the record. (Tr. 26.)

The Commissioner asserts, however, that the ALJ's misstep with respect to the fast food work is harmless because the ALJ *also* found that Hawkins could perform her past relevant work as a metal finisher. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (explaining that an error is harmless when it "would not affect the outcome of th[e] case"). Although Hawkins attempts to undercut the ALJ's finding concerning the metal finisher work, this portion of the ALJ's step-four finding withstands scrutiny, rendering a remand unnecessary.

To explain, Hawkins argues that the ALJ's finding concerning the metal finisher job, which is semi-skilled work, is flawed because Drs. Horton and Shipley, the state agency psychologists, limited her to unskilled work. The ALJ, however, rejected that portion of the state agency psychologists' opinion, finding it inconsistent with her work history. (Tr. 26.) As

13

Hawkins sees it, the ALJ should have given these doctors' opinions more weight because they were the "only medical opinions of record on [her] work-related mental functioning abilities," which would have resulted in an RFC that precluded the semi-skilled metal finisher job. (Pl.'s Opening Br. 10.)

In discounting the opinions of Drs. Horton and Shipley, the ALJ reasoned:

> State agency psychologists concluded that the claimant is limited to unskilled work. However, the undersigned rejects the State agency's assessment given that she performed semi-skilled past relevant work as a doughnut machine operator and metal finisher, which does not appear to be a reduction in functioning. The undersigned finds the evidence is more consistent with mild concentration, persistence, and pace limitations as the claimant functions at a higher level than indicated by her IQ scores. She reported psychotropic medications as effective in managing her psychological symptoms. No additional limitations were included in the [RFC] due to depression or anxiety as the evidence does not support more than minimal functional limitations as a result.

(Tr. 26.)

Attempting to discredit the ALJ's rationale, Hawkins first accuses the ALJ of "playing doctor" concerning her "mood problems and improvement on medication," asserting that "the issue of whether a claimant's improvement on medication contradicts a physician's opinion on limitations is a matter of medical judgment." (Pl.'s Opening Br. 10.) But Hawkins's argument is misplaced. The ALJ did not "play doctor" when he found that Hawkins's psychotropic protocol was effective and efficient in managing her mood; rather, he relied on Dr. Berry's opinion in making that observation. (Tr. 25 (citing Tr. 308-09).) Specifically, Dr. Berry documented: "[Hawkins] reported psychotropic protocol as effective and efficient in managing mood." (Tr. 309.)

Furthermore, it was the ALJ's duty to resolve the conflicting evidence concerning Hawkins's difficulties in concentration, persistence, or pace, and the ALJ appropriately did so.

14

*See Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) ("Weighing conflicting evidence from medical experts . . . is exactly what the ALJ is required to do."). She acknowledged that the state agency psychologists assigned moderate limitations in this area, but she also considered that Dr. Wages's and Dr. Berry's examining opinions found no significant concentration or attention deficits. (Tr. 25-26.) In addition, the ALJ observed that Hawkins was assigned GAF scores of 69 and 75, which were indicative of just slight or mild mental health symptoms or functional difficulties. (Tr. 26.) Accordingly, the ALJ reasonably concluded that Hawkins had only minimal difficulties in maintaining concentration, persistence, or pace. (Tr. 25-26.)

Finally, Hawkins claims, in essence, that the ALJ had to credit the state agency psychologists' opinion limiting her to unskilled work because they were "the only medical opinions of record on [her] work-related mental functioning abilities." (Pl.'s Opening Br. 10.) But "a medical source statement must not be equated with the administrative finding known as the RFC assessment." SSR 96-5p, 1996 WL 374183, at *5. Although an ALJ may ultimately decide to adopt the opinions expressed in a medical source statement concerning the ability of a claimant to perform work-related activities, the RFC assessment is an issue reserved to the ALJ. 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-5p, 1996 WL 374183, at *5.

More pointedly, "the determination of a claimant's RFC is a matter for the ALJ alone–not a treating or examining doctor–to decide." *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014). That is, when assigning an RFC, "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (rejecting claimant's argument that the ALJ erred by failing to adopt an RFC as determined by any of her physicians). Rather, the RFC

15

assessment "is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence . . . ." SSR 96-5p, 1996 WL 374183, at *5; *see Schmidt*, 496 F.3d at 845; 20 C.F.R. §§ 404.1545, 416.945.

When assigning an RFC, the ALJ considered the state agency psychologists' opinion limiting Hawkins to unskilled work, yet she concluded that Hawkins still had the capability to perform semi-skilled work based on her work history as a doughnut machine operator and metal finisher. (Tr. 26.) In doing so, the ALJ observed that Hawkins functioned at a higher level than indicated by her IQ scores, and that her medications were adequately managing her psychological symptoms, requiring no additional limitations in the RFC. (Tr. 26.)

In sum, the ALJ adequately articulated her step-four reasoning, and her conclusion is adequately supported by the evidence of record. *See generally Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) ("[The Commissioner's] decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues."); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (reiterating that an ALJ need only "minimally articulate" her reasoning). The Court cannot accept Hawkins's plea to merely substitute its judgment for the ALJ by "reweighing evidence" in the hope that it will come out in her favor this time. *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000). Accordingly, the Commissioner's final decision will be affirmed.

## V. CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is AFFIRMED. The

Clerk is directed to enter a judgment in favor of the Commissioner and against Hawkins.

SO ORDERED.

Enter for this 6th day of November, 2014.

S/Roger B. Cosbey  
Roger B. Cosbey,  
United States Magistrate Judge